PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BARBARINO FUENTES ALVAREZ, Defendant and Appellant.

No. 5113.   Argued May 4, 1933.—Decided May 19, 1933.

*José Veray, Jr.*, for appellant.   *R. A. Gómez, Fiscal*, for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

Upon being convicted by the District Court of Aguadilla of the offense of adulterating milk, Barbarino Fuentes Alvarez appealed and assigned as an only error that the lower court erroneously weighed the evidence. It was alleged in the information filed by the prosecuting attorney that Barbarino Fuentes as owner, and Pascual Hernández as carrier, had unlawfully, wilfully, and maliciously possessed, transported,

and carried for sale and human consumption, cow's milk adulterated by adding water. It was further alleged that the defendant-appellant had been convicted previously of the same offense.

It is a fact accepted by the appellant that the milk seized from Pascual Hernández turned out to be adulterated. There is no doubt whatever that this defendant transported milk intended for human consumption. It was contended that the milk seized from Pascual Hernández did not belong to the defendant Fuentes nor was transported by him, and in order to establish this contention the defendant produced two witnesses: Pascual Hernández himself and Casildo Acevedo. The former testified that he was charged with the offense and pleaded guilty; that the milk which was seized from him by the health inspector, Ramón Salgado, belonged to Casildo Acevedo, from whom he had purchased it on the road; that he carried four cans of milk that day, three of which belonged to Barbarino Fuentes, and the remaining one was empty and he filled it on his way with the milk which he purchased for resale from Casildo Acevedo; that said milk was for public consumption and that the can in which he kept it was not labeled or marked "B. Fuentes." In answer to questions put by the judge, this witness said that when the milk was seized from him he did not caution the inspector not to confuse the cans of Barbarino Fuentes with the one from which the adulterated milk was taken, because the inspector did not ask him; that there were four cans belonging to Barbarino, and that only three of them were filled that day. Casildo Acevedo testified that he kept milk for sale and that on or about October 9, 1931, he sold to Pascual Hernández twelve liters of milk; that he sent the milk to Pascual Hernández with a laborer (peón) who worked at his home; that Pascual Hernández acted as milk carrier for Fuentes and he poured the milk into a can belonging to the latter; that the milk was wholesome when he sold it to Pascual Hernández; that the latter did not come to his home for the milk; that there is a

road near his home by which said Pascual Hernández had to pass, and that the delivery took place there.

The health inspector Ramón Salgado testified that he came upon Pascual Hernández while he was carrying several milk cans, and that he took from one of such cans the milk which turned out to be adulterated; that the carrier of such milk, Pascual Hernández, is registered in the Health Office as a carrier employed by Barbarino Fuentes, who has filed in said office an affidavit stating that Pascual Hernández is the carrier of the milk belonging to him; that the cans carried that day by Pascual Hernández were labeled, "Borinquen, cow's milk, pure; B. Fuentes, owner"; that such was the label appearing on the can from which he took the milk samples.

It is not claimed by the defendant that the lower court was moved by passion, bias, or prejudice in making its findings. The court is charged with having seriously erred in weighing the evidence. In our judgment the evidence adduced is sufficient to sustain the judgment of conviction rendered by the lower court. The defense admitted that Barbarino Fuentes had filed in the offices of the Department of Health an affidavit, according to which Pascual Hernández was in charge of carrying the milk belonging to Fuentes. The cans carried by Pascual Hernández were labeled with the name of B. Fuentes. If, as the said witness stated, the milk seized by the health inspector had been purchased from Casildo Acevedo, there was no reason for his remaining silent, without calling the attention of said inspector so that the latter should not attribute the ownership of the milk to someone who was not the lawful owner thereof. This witness first testified, on examination by counsel for the defendant, that there were three cans belonging to Barbarino Fuentes. Later, in answer to questions put by the judge, he said that there were four, but that only three of them were filled that day. The empty can was given to the witness by the defendant to purchase milk for his own account. Pascual Hernández also

said that the can from which the milk was taken had no label. We transcribed a part of the testimony given by this witness on cross-examination, thus:

"Q.—What was the milk intended for?

"A.—For public consumption.

"Q.—And the can which contained the milk, was it not labeled?

"A.—That one was not labeled.

"Q.—Did not the name B. Fuentes appear on that can?

"A.—No, sir.

"Q.—For whom did you act as milk carrier at that time?

"A.—For Barbarino Fuentes."

The above testimony is in conflict with that of the health inspector, who stated that the can from which the sample was taken had, inscribed thereon, the name of the defendant B. Fuentes.

Casildo Acevedo testified that Pascual Hernández poured the milk into a can belonging to plaintiff, and he stated this after he had asserted that he sent the milk with a laborer and that Pascual Hernández did not go to his home to fetch it. So this witness, who claims to have sold twelve liters of milk to Pascual Hernández, appears to have been present—since he asserts the fact as of his own knowledge— at the time the milk was poured into the can, although the milk is said to have been sent by him to its destination with one of his laborers. The lower court did not believe the testimony of these witnesses. And in this it must be conceded that it acted correctly. The evidence, taken as a whole, clearly shows the defendant's guilt.

The judgment appealed from must be affirmed.